**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| Best Drinks, LLC, a Virginia limited liability company<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Consorzio Di Tutela Della Denominazione Di Origine Controllata Prosecco, an association incorporated under the laws of Italy<br><br>　　　　　Defendant. | Case No. 1:25-cv-1711 |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Best Drinks, LLC ("Best Drinks" or "Plaintiff"), by and through its attorneys, respectfully moves this Court pursuant to Fed. R. Civ. P. 65 for a temporary restraining order and preliminary injunction requiring Defendant Consorzio di Tutela della Denominazione di Origine Controllata Prosecco ("Defendant") to cease all efforts to transfer, disable, or otherwise interfere in any way with Plaintiff's ownership, registration, or use of the domain names <Prosecco.com>, <ProseccoDOC.com>, and the additional Prosecco-related domain names identified in Complaint Exhibit 17 (collectively, the "Domain Names").

Plaintiff further requests that the Court issue an order directing Network Solutions, LLC ("NetSol") and GoDaddy.com, LLC ("GoDaddy")—the U.S.-based registrars of record for the Domain Names—to maintain the status quo by prohibiting either registrar from permitting any change to the registrant, registrar, or contact information for the Domain Names, or from effectuating any transfer of the Domain Names to another registrar or registrant, except where such changes or transfers are initiated by Plaintiff.

1

This relief is urgently required. On August 24, 2025, Defendant initiated litigation in the United Kingdom seeking to compel the transfer and cessation of use of the Domain Names. If Defendant obtains a foreign order, U.S.-based registrars such as NetSol and GoDaddy could be pressured to comply—just as occurred in the well-known *France.com* case, where a U.S. registrant permanently lost its domain name through the enforcement of a foreign judgment. Because the Domain Names are owned by a United States company, registered through U.S.-based registrars, and governed by U.S. law, only this Court can preserve the status quo and prevent imminent, irreparable harm.

## FACTUAL BACKGROUND

This dispute concerns Plaintiff's lawful ownership and use of valuable domain names (the "Domain Names") that Defendant now seeks to seize through foreign litigation after failing to obtain any rights under United States law.

In 2018, while residing in California, Michael Goldstein purchased the Domain Names in his personal capacity in connection with the intent to start a business involving the marketing and promotion of Prosecco. (Declaration of Michael Goldstein ("Goldstein Decl.") ¶ 7.) After initially registering the Domain Names in his own name, Mr. Goldstein transferred them in 2021 to Prosecco International Limited ("PIL"), a United Kingdom company in which he and his father served as directors. (Id. ¶ 11.) In September 2022, PIL conveyed and assigned all rights, title, and interest in the Domain Names to Best Drinks, LLC, a Virginia limited liability company. Plaintiff has owned and controlled the Domain Names continuously since that time. (Id. ¶ 12).

Through the Domain Names, Plaintiff operates websites that promote, market, and provide information about Italian Prosecco wines, including Plaintiff's Bella Principessa, Signorina, and Bella Vino brands. (Id. ¶ 13.) The websites prominently include clear disclaimers confirming that Plaintiff is independent from, and not affiliated with, the Italian trade associations that regulate "Prosecco" as a geographic indication in Europe. (See Compl. Ex. 6.) The Domain Names also serve as Plaintiff's primary online infrastructure: Plaintiff's business

2

1  email system is hosted exclusively through these domains, making them essential for
2  communication with partners, distributors, and customers. (Id. ¶ 14.)

3  Defendant's campaign to seize the Domain Names began nearly three years before filing
4  suit. In July 2022, Defendant's Director of Economic and Legal Affairs emailed PIL stating that
5  "the domain names proseccodoc.com but overall prosecco.com and prosecco.jp, that you
6  apparently have registered, are certainly of great interest for our Consortium and would be key
7  to further promote our product," and asked whether Goldstein "would be open to consider to
8  assign it/them to us." (Compl. Ex. 11; Goldstein Decl. ¶ 16.) Over the following months,
9  Defendant sent repeated follow-up emails pressing for a transfer, despite being told that the
10 Domain Names were "in use and not for sale." (Compl. Ex. 12; Goldstein Decl. ¶ 17.)

11 In 2023 and 2024, Defendant escalated its campaign with threats of legal action,
12 repeatedly directing letters to PIL even after being expressly informed that Best Drinks, not PIL,
13 owned the Domain Names. (See Compl. Exs. 14a–14d.) Plaintiff and PIL both advised
14 Defendant to direct any concerns to Best Drinks, and even filed a complaint with Defendant's
15 law firm when the harassment continued. (Compl. Exs. 14a–14b; Goldstein Decl. ¶¶ 18-22.)

16 At the same time, Defendant attempted—and failed—to secure exclusive rights to the
17 term "Prosecco" in the United States. In 2019, Defendant filed a U.S. trademark application for
18 PROSECCO as a certification mark. (Compl. Ex. 7.) The U.S. Patent and Trademark Office
19 ("USPTO") refused registration, finding that "Prosecco" is generic and "identifies a grape
20 variety, not a place of origin." (Compl. Exs. 8–9.) Defendant's request for reconsideration was
21 likewise denied, and by August 2023, it abandoned the application altogether. (Compl. Ex. 10.)

22 Having failed under U.S. law, Defendant turned abroad. On August 24, 2025, Defendant
23 commenced an action in the High Court of Justice in London against PIL, Michael Goldstein,
24 and Ralph Goldstein—despite knowing that Plaintiff is the lawful owner of the Domain
25 Names—alleging violations of United Kingdom law governing Protected Designations of Origin
26 (PDOs). (Compl. Ex. 16; Goldstein Decl. ¶25) Among other remedies, Defendant seeks
27 suspension and transfer of the Domain Names. The relief sought is not confined to the United

28

3

1  Kingdom; if enforced, it would operate globally to deprive Plaintiff of its lawfully owned
2  property.
3        In sum, despite Plaintiff's clear ownership rights under United States law, Defendant has
4  pursued a years-long campaign to pressure Plaintiff and its predecessors into surrendering the
5  Domain Names, culminating in foreign litigation that seeks extraterritorial remedies unavailable
6  in this jurisdiction. Defendant's actions pose an immediate threat of irreparable harm to
7  Plaintiff's goodwill, business communications, and investor relationships, and warrant this
8  Court's intervention under Rule 65.

## LEGAL STANDARD

10        Under Federal Rule of Civil Procedure 65(b)(1), a court may issue a temporary restraining
11  order without notice only if "specific facts in an affidavit or a verified complaint clearly show that
12  immediate and irreparable injury, loss, or damage will result to the movant before the adverse party
13  can be heard," and the movant's attorney certifies in writing the efforts made to provide notice and
14  the reasons notice should not be required. Fed. R. Civ. P. 65(b)(1)(A)–(B).
15        Consistent with this federal standard, courts in the Eastern District of Virginia require a
16  party seeking a temporary restraining order to provide verified facts establishing entitlement to
17  relief, a precise description of the conduct to be restrained, a verified explanation of the proposed
18  security, a supporting legal memorandum, and a proposed order. Taken together, these
19  requirements ensure that a TRO—particularly one sought *ex parte*—issues only upon a compelling
20  showing of both urgency and procedural fairness.
21        The Court has authority to grant injunctions to prevent a violation of the Anti-
22  Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1116(a), to issue injunctions
23  preventing interference with a domain name registrant's lawful rights. To obtain a TRO, Plaintiff
24  must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm absent relief;
25  (3) that the balance of equities tips in its favor; and (4) that an injunction serves the public
26  interest. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *See also Sarsour v.*
27  *Trump*, 245 F.Supp.3d 719, 2017 (E.D. Va 2017).

## ARGUMENT

This Court's intervention is urgently required to safeguard Plaintiff's rights and interests in the Domain Names and to prevent Defendant from misusing foreign litigation in the United Kingdom to deprive Plaintiff of its ability to access and control property to which it is the rightful registrant. United States courts have long emphasized the need to uphold domestic legal principles—including trademark and property protections—and to ensure that U.S. domain name registrants are not subjected to foreign legal standards that conflict with U.S. law.

The relief sought here is modest. Plaintiff seeks only to preserve the status quo. Temporary restraining orders are routinely granted in domain name disputes to maintain stability and prevent irreparable harm. Typically, such relief is sought by trademark owners to prevent domain names alleged to be used for cybersquatting from being transferred beyond the Court's reach. See, e.g., *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785 (4th Cir. 2023) (affirming a preliminary injunction under the Anti-Cybersquatting Consumer Protection Act where plaintiff demonstrated irreparable harm, a favorable balance of equities, and a strong public interest in preserving the rightful owner's control of domain names).

Here, however, the circumstances are the reverse. Plaintiff—a United States domain name registrant—faces an imminent and unlawful attempt by a foreign entity to use a non-U.S. judgment to seize property located within the United States and to impose foreign legal standards in direct conflict with U.S. law. Unless restrained, Defendant's actions will strip a U.S. registrant of its lawfully held domain names and undermine this Court's authority over property governed exclusively by the laws of the United States.

Temporary injunctive relief is therefore essential to preserve the status quo, prevent irreparable harm, and safeguard the jurisdiction of this Court until the merits can be fully adjudicated. See *Hawes v. Network Solutions, Inc.*, 337 F.3d 377 (4th Cir. 2003) (recognizing that a domain name registrant aggrieved by an overreaching foreign trademark claimant may obtain injunctive relief under U.S. law). In *Hawes*, the registrant obtained relief even after its domain name had already been wrongfully transferred abroad; here, a TRO and subsequent

preliminary injunction would prevent that harm altogether by ensuring the Domain Names remain within the jurisdiction and protection of the United States courts.

    A.    <u>Plaintiff is likely to Succeed on the Merits</u>

Plaintiff is entitled to injunctive relief if it demonstrates a likelihood of success on the merits of any one of its claims. Here, Plaintiff can show it is likely to prevail on multiple independent grounds, including under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114(2)(D)(v), and related federal trademark principles.

        **1.**    **The ACPA Empowers Plaintiff to Stop Defendant's Unlawful Interference**

Section 1114(2)(D)(v) of the ACPA grants a cause of action to any domain name registrant whose domain name "has been suspended, disabled, or transferred, or is threatened with such action," allowing the registrant to establish that its registration and use of the domain name are lawful under the Lanham Act.

Defendant's interference with Plaintiff's Domain Names is baseless and calculated to inflict irreparable harm. Plaintiff lawfully owns <Prosecco.com>, <ProseccoDOC.com>, and other Prosecco-related domain names (the "Domain Names"). Each of these names is registered within the .com top-level domain, operated by Verisign, Inc., a corporation headquartered within this judicial district. The registrars—Network Solutions, LLC and GoDaddy.com, LLC—are U.S.-based entities. Thus, every entity in the domain name chain of title—the registrant, registrars, and registry—is located within the United States, confirming that U.S. law exclusively governs these registrations.

The ACPA was designed to prevent both cybersquatting and reverse domain name hijacking, protecting legitimate registrants from trademark owners who misuse their rights to wrongfully seize domain names. *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 383–84 (4th Cir. 2003); *Barcelona.com, Inc. v. Excelentísimo Ayuntamiento de Barcelona*, 330 F.3d 617, 624–25 (4th Cir. 2003). As the Fourth Circuit has made clear, "domain name disputes involving

U.S. registrars must be resolved under U.S. trademark law—even where foreign courts issue conflicting rulings." *Barcelona.com*, 330 F.3d at 628.

### 2. Defendant Failed Under U.S. Law to Secure Any Rights in "Prosecco"

Defendant cannot claim any U.S. trademark rights in "Prosecco." The U.S. Patent and Trademark Office ("USPTO") rejected its application to register PROSECCO as a certification mark, finding the term generic and concluding that it "identifies a grape variety, not a place of origin." (Compl. Exs. 8–9.) The USPTO explicitly noted that no treaty or international agreement confers exclusive rights to "Prosecco" in the United States. After reconsideration, Defendant's request was denied, and it abandoned its application in August 2023. (Compl. Ex. 10.)

### 3. The term "Prosecco" is not protectable under United States law

Congress enacted the Lanham Act to protect distinctive marks used in commerce, but not words that serve as generic names for products. 15 U.S.C. §§ 1052(e), 1064(3); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94 (1985). Generic terms are those that "refer to the genus of which the particular product is a species." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Such terms are never registrable, and even a registered mark may be canceled at any time if it becomes generic. *Park 'N Fly*, 469 U.S. at 193–94.

The USPTO's findings establish that "Prosecco" is the generic name of a varietal of wine and grape and therefore incapable of trademark protection in the United States. (Compl. Ex. 8 at 4.) The USPTO found that U.S. consumers understand "Prosecco" as a type of wine and grape—not as an indication of geographic origin. On reconsideration, the USPTO criticized Defendant's 2009 attempt to rebrand the Prosecco grape as "Glera" as a "commercially protective" maneuver intended to mislead consumers and circumvent the genericness bar. (Compl. Ex. 9 at 7.) The record confirmed that this strategy failed: "Glera" was not a recognized synonym and merely reflected a local name historically used within a small part of the Prosecco-producing region. The USPTO therefore concluded that "Prosecco" remains a generic term and cannot be monopolized by any party.

7

### 4. Defendant's U.K. Litigation Constitutes Forum Shopping and an Attempt to Evade U.S. Law

Having failed under U.S. law, Defendant turned to the United Kingdom to seek broader protection under European geographic indication ("GI") law. In its U.K. complaint, Defendant deliberately avoided naming the actual U.S. registrant—Best Drinks—and instead sued a previous owner and two individuals, seeking to apply foreign legal standards extraterritorially.

These tactics constitute forum shopping and are designed to circumvent the clear outcome of U.S. proceedings. They threaten not only Plaintiff's property interests but also its business operations, goodwill, and First Amendment rights to use generic terminology in commerce.

Congress enacted the ACPA precisely to prevent such abuse and to ensure that domain name disputes involving U.S. property are adjudicated under U.S. law. 15 U.S.C. § 1114(2)(D)(v). Allowing a foreign judgment to dictate the disposition of domain names registered through U.S. registrars would eviscerate these statutory protections and invite global forum shopping. Temporary injunctive relief is therefore essential not only to protect Plaintiff's rights but also to preserve the territorial integrity of the federal trademark system and the policies embodied in the ACPA.

### 5. U.S. Trademark Law, Under Territoriality, Precludes Foreign Legal Principles from Overriding It

The principle of territoriality is a cornerstone of U.S. trademark law. It requires that disputes involving U.S. registrants, registrars, and registries be resolved under U.S. law, not foreign standards. *Barcelona.com*, 330 F.3d at 627–28 ("Domain name disputes involving U.S. registrars must be resolved under U.S. trademark law—even where foreign courts issue conflicting rulings."). Likewise, U.S. courts do not enforce rights that exist solely under foreign law. *Person's Co. v. Christman*, 900 F.2d 1565, 1568–69 (Fed. Cir. 1990).

The Fourth Circuit reaffirmed this principle in *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 387 (4th Cir. 2003), explaining that while a § 1114(2)(D)(v) action "requires

application of only United States law," a foreign trademark owner is free to assert U.S.-based rights through counterclaims. Thus, Plaintiff does not dispute Defendant's ability to litigate its own U.K. trademark rights abroad. What it contests is Defendant's effort to reach into the United States and interfere with domain names lawfully registered by a U.S. company through U.S. registrars and a U.S. registry—conduct that directly violates the ACPA and the principle of territoriality.

### 6. Geographic Indications Do Not Provide Grounds for Domain Transfer Under U.S. Law

Defendant's reliance on geographic indications is misplaced. Under U.S. law, protection extends only to valid trademarks that function as source identifiers and that are capable of causing consumer confusion. See 15 U.S.C. § 1125(a). Geographic indications, by contrast, are not recognized bases for domain name transfer or injunction unless they qualify as trademarks under the Lanham Act—a threshold the USPTO has already found "Prosecco" fails to meet. (Compl. Exs. 8–9.)

Accordingly, any foreign court order premised on a geographic indication cannot justify suspension, disabling, or transfer of domain names registered through U.S. registrars and governed by U.S. law.

**B.**  <u>Plaintiff Stands to Suffer Irreparable Harm if the Domain Name is Ordered to be transferred, suspended or otherwise prevents Plaintiff from being allowed to use the Domain Names</u>

Absent a temporary restraining order, Plaintiff will suffer substantial, immediate, and irreparable harm. Plaintiff is already being forced to defend litigation in the United Kingdom over issues governed exclusively by United States law and faces the imminent risk that a U.K. court will issue an order compelling the transfer of the Domain Names. Even if entered abroad, such an order could be transmitted to the U.S.-based registrars—Network Solutions, LLC and GoDaddy.com, LLC—creating a very real risk that they will comply despite the inconsistency of such action with U.S. law.

9

This danger is not hypothetical. In *France.com, Inc. v. French Republic*, 992 F.3d 248 (4th Cir. 2021), a U.S. registrant lost the domain <france.com> through foreign litigation when a French court declared the French government the owner and transmitted its order to Network Solutions, which executed the transfer. When the registrant later sued under the ACPA, the Fourth Circuit held that sovereign immunity barred the action, leaving the court powerless to restore the property. The same risk exists here. Although Defendant is a private entity rather than a sovereign, the danger is equally acute: once transferred under a foreign judgment, Defendant could immediately move the Domain Names to a registrar outside the United States, placing them beyond this Court's jurisdiction and permanently depriving Plaintiff of its property.

The suspension or transfer of the Domain Names would devastate Plaintiff's business operations. *See* Goldstein Decl. § 29. Plaintiff relies on the Domain Names as the central hub of its commercial activity, using them to market and distribute its Prosecco products. Every bottle sold by Plaintiff and its partners prominently features <Prosecco.com> or <ProseccoDOC.com>, directing consumers to these websites for authentic product information. Loss of the Domain Names would deny consumers access to accurate brand information, erode public trust, and irreparably damage Plaintiff's reputation and goodwill. *Id.*

The harm extends beyond loss of reputation. Plaintiff's business email is hosted exclusively through the Domain Names, meaning their loss would sever all communication with distributors, suppliers, investors, and customers. Id. ¶30. This would immediately disrupt active sales and shipments, destabilize distribution networks, and result in the loss of customers and contracts. Plaintiff has already shipped multiple cases of Prosecco for distribution and sale within this State; the interruption of its online presence and communications would directly impair those active sales, causing measurable yet irreparable harm. *Id*.

These harms—loss of consumer trust, goodwill, and customer relationships—are classic forms of irreparable injury under controlling precedent. See *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (holding that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers or goodwill, the irreparable injury prong is satisfied"), abrogated on other grounds by *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Arminius Schleifmittel GmbH v. Design Indus., Inc.*, No. 1:06CV00644, *2007 U.S. Dist. LEXIS 10847, at 22 (M.D.N.C. 2007) (irreparable harm found where ongoing conduct "will have significant and continuous long-term effects").

The same conclusion follows in recent domain-related injunctions. See *Getir US, Inc. v. John Doe*, No. 1:21-cv-1237 (E.D. Va. Nov. 12, 2021) (granting ex parte TRO against domain interference where immediate injury to goodwill and online infrastructure was shown).

Moreover, Plaintiff is actively engaged in fundraising to expand distribution and marketing efforts. The existence of the U.K. lawsuit—and the looming threat of domain loss—casts a shadow over those efforts. Without injunctive relief, Plaintiff will be forced to disclose this risk to potential investors, chilling or terminating ongoing negotiations. The resulting loss of capital would cripple Plaintiff's growth, hinder competitiveness, and cause long-term damage to its business prospects. Goldstein Decl. ¶31.

Taken together, these harms—loss of consumer trust, disruption of communications, interference with current sales, destruction of goodwill, and collapse of investor confidence—demonstrate the immediate, non-speculative, and irreparable injury Plaintiff will suffer absent temporary injunctive relief. Plaintiff has therefore satisfied its burden under Rule 65 to establish irreparable harm, warranting entry of a temporary restraining order.

    C.    <u>The Balance of Equities and the Public Interest Strongly Favor Granting a Temporary Restraining Order</u>

The relief Plaintiff seeks is narrow and limited: it simply preserves the status quo by ensuring that Defendant and the U.S.-based registrars take no action that would divest Plaintiff of its lawful ownership and control of the Domain Names. Defendant will suffer no cognizable harm from such relief, which merely prevents unlawful interference with Plaintiff's existing rights while allowing this Court to resolve the dispute on the merits.

Courts consistently hold that a registrant's interest in maintaining control over its domain names outweighs any speculative harm claimed by adverse parties. In *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767 (11th Cir. 2015), the court held that the registrant's loss of control constituted

11

irreparable injury and that maintaining the rightful owner's possession of domain names served the balance of equities. The same rationale applies here: Plaintiff's interest in preserving its lawfully registered Domain Names—and preventing the imposition of foreign legal standards inconsistent with U.S. law—far outweighs any purported harm to Defendant.

The public interest also overwhelmingly favors injunctive relief. As *Jysk* emphasized, ensuring that domain names remain with their rightful owner promotes—not undermines—the public interest. That principle is particularly compelling here, where the Domain Names incorporate the term "Prosecco," which the USPTO has expressly determined to be generic and therefore unprotectable under U.S. law.

Courts have long recognized that generic and descriptive terms must remain free for all to use; monopolizing such words distorts markets and suppresses competition. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Allowing Defendant to achieve through foreign litigation what U.S. law prohibits would undermine Plaintiff's rights and chill the public's ability to use a common term in commerce and expression.

Protecting generic terms from monopolization safeguards not only competition and consumer choice but also free expression, values grounded in both the Lanham Act and the First Amendment. *Matal v. Tam*, 582 U.S. 218, 235–37 (2017). Maintaining Plaintiff's ownership and use of the Domain Names therefore advances the public interest by ensuring that "Prosecco" remains free for lawful use by all, consistent with U.S. statutory and constitutional principles.

### D. Bond

Plaintiff acknowledges the mandatory language of Federal Rule of Civil Procedure 65(c) concerning the requirement of security. However, the amount of any bond rests squarely within the discretion of the district court. Courts in this Circuit have long recognized that "district courts have discretion to set the required security at a nominal amount." *Maryland v. United States Dep't of Agric.*, 770 F. Supp.3d 779, 820 (D. Md. 2025); see also *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). This is particularly appropriate where the risk of harm to the enjoined party is minimal or nonexistent. See, e.g., *Bernstein v. Sims*, 643 F. Supp. 3d 578 (E.D.N.C. 2022) (declining to require a bond).

Here, Plaintiff already owns the Domain Names and seeks only to preserve the status quo during the pendency of this action. Defendant will suffer no cognizable harm beyond its inability to enforce a judgment of a United Kingdom court—courts that lack jurisdiction over these Domain Names and have no authority to compel their transfer or suspension. The Domain Names are owned by a U.S. company, registered through U.S.-based registrars, and governed exclusively by U.S. law.

Accordingly, Defendant cannot credibly contend that a meaningful bond is warranted. Plaintiff's likelihood of success on the merits is overwhelming, and any purported harm to Defendant based on "rights" that do not exist under U.S. law is legally irrelevant. For these reasons, if the Court elects to require security at all, a nominal bond of $100 is more than sufficient.

## **CONCLUSION**

Plaintiff faces immediate and irreparable harm from Defendant's conduct. To prevent unlawful interference with Plaintiff's property rights, preserve the status quo, and permit the Court to afford meaningful relief on the merits, the Court should grant Plaintiff's motion for a temporary restraining order and order to show cause. Given the imminent and extraterritorial nature of the threat, this relief should issue *ex parte* and without advance notice to Defendant.

For the foregoing reasons, Plaintiff respectfully requests that the Court issue the following relief:

    i.    A temporary restraining order, preliminary injunction, and permanent injunction restraining Defendant—together with its officers, agents, servants, employees, attorneys, successors, assigns, and all persons acting in concert or participation with it—from transferring, disabling, or otherwise interfering in any way with Plaintiff's ownership, registration, or use of the Domain Names set forth in Comp. Ex. 17;

    ii.    An order directed to Network Solutions, LLC and GoDaddy.com, LLC prohibiting either registrar from permitting any changes to the registration information for the Domain Names set forth in Comp. Ex. 17, or from effectuating any transfer of the Domain Names to another registrar or

13

registrant, except where such changes or transfers are initiated by Plaintiff; and

 iii. An order to show cause, pursuant to Federal Rule of Civil Procedure 65, requiring Defendant to appear and demonstrate why a preliminary injunction should not issue enjoining it from engaging, directly or indirectly, in the conduct described above during the pendency of this action.

 iv. Such other and further relief as the Court deems just and proper.

DATED: October 7, 2025,

/s/Jeffrey J. Neuman
Jeffrey J. Neuman (VA Bar No. 41744)
Jeff@jjnsolutions.com
JJN Solutions, LLC
9445 Brenner Ct.
Vienna, VA 22180
Tel: 202-549-5079

*Attorney for Plaintiff, Best Drinks LLC*