UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BEST DRINKS, LLC, | ) |
| | ) |
|     *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 1:25cv01711 (PTG/LRV) |
| | ) |
| CONSORZIO DI TUTELA DELLA | ) |
| DENOMINAZIONE DI ORIGINE | ) |
| CONTROLLATA PROSECCO, | ) |
| | ) |
|     *Defendant.* | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................1

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................3

LEGAL STANDARD ...................................................................................................5

    I.     MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ........5

    II.    MOTION TO DISMISS FOR LACK OF VENUE ..........................................5

    III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM .....................6

ARGUMENT ................................................................................................................6

    I.     THE COURT LACKS PERSONAL JURISDICTION OVER CONSORZIO ................................................................................................6

          A.     Plaintiff Failed to Plead a Basis for General Jurisdiction .....................6

          B.     Plaintiff Failed to Plausibly Allege Specific Jurisdiction .....................7

               1.     Consorzio Did Not Purposefully Avail Itself in Virginia ...........7

               2.     Plaintiff's Claims Do Not "Arise Out Of or Relate To" Any Virginia Contact .................................................................9

               3.     Exercising Jurisdiction Would Be Constitutionally Unreasonable..........................................................................10

          C.     Plaintiff's Registry Location Theory is Legally Insufficient for *In Personam* Personal Jurisdiction...........................................................10

    II.    FORUM NON CONVENIENS WARRANTS DISMISSAL .........................11

          A.     *Forum Non Conveniens* Dictates that the Court Dismisses Plaintiff's Amended Complaint ..........................................................11

    III.   INTERNATIONAL COMITY AND DECLARATORY JUDGMENT ABSTENTION WARRANT DISMISSAL OR, AT A MINIMUM, A STAY.........................................................................................................14

    IV.   VENUE IS IMPROPER ..............................................................................17

    V.    ALTERNATIVELY, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ...................................18

          A.     Count One's ACPA Declaratory Judgment Fails Because Plaintiff Failed to Plead a Concrete Threat .......................................................18

**Table of Contents (continued)**

|  |  | Page |
|---|---|---|
| B. | Count Two's *In Rem* Declaratory Judgment Under § 1125(d)(2) Fails Because Best Drinks Is Not a Mark Owner | 19 |
| C. | Count Three's Request for Declaratory Judgment— Non-Infringement is Not Ripe as Pleaded and Should be Dismissed | 20 |
| D. | Count Four's Fails to Adequately Allege "Use in Commerce" or Commercial Misrepresentation Made By Consorzio in the U.S. | 21 |
| E. | Plaintiff Fails to Adequately Plead Count Five's Fraud and Misrepresentations | 23 |
| F. | Count Six's Tortious Interference with Business Expectancy Fails to Allege Improper Methods | 24 |
| G. | Plaintiff's Count Seven Must be Dismissed As Consorzio Has Not Deprived Plaintiff of Any Property | 25 |
| H. | Count Eight's Abuse of Process Fails Because Foreign Filing for Claimed PDO Rights Is Not "Abuse" | 26 |

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023)..................................................................................................22

*AdvanFort Co. v. Zamil Offshore Servs. Co.*,
704 F. Supp. 3d 669 (E.D. Va. 2023) ...........................................................13, 14

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937)..................................................................................................20

*Am. Online, Inc. v. AOL.org*,
259 F. Supp. 2d 449 (E.D. Va. 2003) ...................................................................10

*AudioPod IP, LLC v. Amazon.com, Inc.*,
No. 3:24CV406 (RCY), 2025 U.S. Dist. LEXIS 37915 (E.D. Va. Mar. 3,
2025) ...........................................................................................................................5

*BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program
Admin.*,
884 F.3d 463 (4th Cir. 2018) ................................................................................15

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*,
330 F.3d 617 (4th Cir. 2003) ................................................................................19

*BDL Int'l v. Sodetal USA, Inc.*,
377 F. Supp. 2d 518 (D.S.C. 2005).......................................................................15

*BNX Sys. Corp. v. Nardolilli*,
368 F. App'x 339 (4th Cir. 2010) ........................................................................26

*Brillhart v. Excess Ins. Co.*,
316 U.S. 491 (1942)...........................................................................................16, 17

*Bristol-Myers Squibb v. Superior Court*,
582 U.S. 255 (2017)....................................................................................................9

*Brown v. Mitchell*,
308 F. Supp. 2d 682 (E.D. Va. 2004) ...................................................................25

*Capital Currency Exch. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998).....................................................................................13

*In re Capital One Fin. Corp.*,
Civil Action No. 1:25-cv-023, 2025 U.S. Dist. LEXIS 104577 (E.D. Va.
June 2, 2025)............................................................................................................25

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ........................................................................................5

*Centennial Life Ins. Co. v. Poston*,
  88 F.3d 255 (4th Cir. 1996) .................................................................................16, 17

*Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*,
  259 F.3d 209 (4th Cir. 2001) ......................................................................................10

*CNN L.P. v. Cnnews.com*,
  162 F. Supp. 2d 484 (E.D. Va. 2001) ........................................................................10

*Conopco, Inc. v. Rebel Smuggling, LLC*,
  No. 2:21-cv-347, 2021 U.S. Dist. LEXIS 239497 (E.D. Va. Dec. 14, 2021)...............9, 10

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ........................................................................................7

*Crabtree v. Aon Ins. Managers Bermuda Ltd.*,
  Civil Action No. 1:23-cv-00493, 2023 U.S. Dist. LEXIS 166953 (E.D. Va.
  Aug. 15, 2023) ..............................................................................................................8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)......................................................................................................6

*DiFederico v. Marriott Int'l Inc.*,
  714 F.3d 796 (4th Cir. 2013) ......................................................................................14

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2022)...................................11, 12

*ElcomSoft, Ltd. v. Passcovery Co.*,
  958 F. Supp. 2d 616 (E.D. Va. 2013) ...................................................................12, 14

*Fountain Enters., LLC v. Markel Ins. Co.*,
  568 F. Supp. 3d 613 (E.D. Va. 2021) .........................................................................25

*Galloway v. Martorello*,
  Civil Action No. 3:19-cv-314, 2023 U.S. Dist. LEXIS 140785 (E.D. Va.
  Aug. 11, 2023) ..............................................................................................................9

*Hilton v. Guyot*,
  159 U.S. 113 (1895)....................................................................................................14

*Hitachi Credit Am. Corp. v. Signet Bank*,
  166 F.3d 614 (4th Cir. 1999) ......................................................................................23

*Hunt v. Calhoun Cty. Bank, Inc.*,
  8 F. Supp. 3d 720 (E.D. Va. 2014) .............................................................................23

*Indium Corp. of America v. Semi-Alloys, Inc.*,
  781 F.2d 879 (Fed. Cir. 1985).....................................................................................20

iv

*Jiali Tang v. Synutra Int'l, Inc.*,
   656 F.3d 242 (4th Cir. 2011) ......................................................................... 11, 12, 14

*Katz v. Odin, Feldman & Pittleman, P.C.*,
   332 F. Supp. 2d 909 (E.D. Va. 2004) ............................................................... 24

*Kontoulas v. A.H. Robins Co.*,
   745 F.2d 312 (4th Cir. 1984) ........................................................................... 11

*Labram v. Havel*,
   43 F.3d 918 (4th Cir. 1995) ............................................................................. 25

*LBLA Beauty, LLC v. 11177753 Can. Corp.*,
   Civil Action No. 1:23-cv-665, 2025 U.S. Dist. LEXIS 55594 (E.D. Va.
   Mar. 25, 2025)................................................................................................... 6

*McCauley v. Home Loan Inv. Bank*,
   710 F.3d 551 (4th Cir. 2013) ........................................................................... 23

*Mehta v. Maddox*,
   Civil Action No. 1:16-cv-1616, 2017 U.S. Dist. LEXIS 79276 (E.D. Va.
   May 23, 2017).................................................................................................... 17

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
   15 F.3d 371 (4th Cir. 1994) ............................................................................. 16

*New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America*,
   946 F.2d 1072 (4th Cir. 1991) ......................................................................... 16

*NSCO v. Colby_Exon, LLC*,
   Civil Action No. 3:16cv848, 2018 U.S. Dist. LEXIS 55080 (E.D. Va. Mar.
   30, 2018) ........................................................................................................... 22

*Nutramax Labs. Veterinary Scis., Inc. v. Candioli S.R.L.*,
   No. 0:19-01835-MGL, 2021 U.S. Dist. LEXIS 44983 (D.S.C. Mar. 10,
   2021) ................................................................................................................. 15

*People for Ethical Treatment of Animals v. Doughney (PETA)*,
   263 F.3d 359 (4th Cir. 2001) ........................................................................... 22

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)....................................................................................... 11, 12

*Pollux Holding, Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003)............................................................................... 13

*Priority Auto Grp., Inc. v. Ford Motor Co.*,
   757 F.3d 137 (4th Cir. 2014) ........................................................................... 24

*Rubink v. Richland Cty. Sheriff's Dep't*,
   No. 3:25cv220, 2025 U.S. Dist. LEXIS 111404 (E.D. Va. June 11, 2025).......... 5

v

*State Farm Mut. Auto. Ins. Co. v. Remley*,
  270 Va. 209, 618 S.E.2d 316 (2005)......................................................................23

*Symbology Innovations, LLC v. Lego Sys.*,
  158 F. Supp. 3d 916 (E.D. Va. 2017) ......................................................................6

*Teleqo Tech. Sols., Inc. v. Archtop Fiber LLC*,
  No. 1:24-cv-01515-MSN-LRV, 2024 U.S. Dist. LEXIS 207340 (E.D. Va.
  Nov. 13, 2024) ......................................................................................................5, 7

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ....................................................................................5

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) ............................................................................5, 7, 9

*Virgin Enters., Ltd. v. Virgin Cuts, Inc.*,
  149 F. Supp. 2d 220 (E.D. Va. 2000) ................................................................20, 21

*Vulcan Chemical Technologies, Inc. v. Barker*,
  297 F.3d 332 (4th Cir. 2002) ..................................................................................15

*Walden v. Fiore*,
  571 U.S. 277 (2014)..................................................................................................8

*Weitzman v. Lead Networks Domains Pvt., Ltd.*,
  No. 1:09-cv-01141, 2010 U.S. Dist. LEXIS 121290 (E.D. Va. Sep. 24,
  2010) ........................................................................................................11, 18, 19

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)..........................................................................................16, 17

**Statutes**

15 U.S.C. § 1114..............................................................................................................22

15 U.S.C. § 1114(2)(D)(ii)(II) ........................................................................................18

15 U.S.C. § 1114(2)(D)(v)......................................................................................2, 18, 19

15 U.S.C. § 1125(a) .........................................................................................................22

15 U.S.C. § 1125(d)(2) ...........................................................................................*passim*

15 U.S.C. § 1125(d)(2)(A)(i)...........................................................................................19

28 U.S.C. § 1391(b) .........................................................................................................17

28 U.S.C. § 2201..............................................................................................................16

Anti-Cybersquatting Consumer Protection Act..............................................................*passim*

Declaratory Judgment Act ...............................................................................................16

Federal Declaratory Judgments Act .......................................................................................16

Lanham Act ...................................................................................................................... 9, 19

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................23

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 5, 10, 27

Fed. R. Civ. P. 12(b)(3) ...................................................................................................... 5, 27

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 6, 25, 27

**Other Authorities**

United States Constitution Article III .....................................................................................20

## INTRODUCTION

Defendant Consorzio di Tutela della Denominazione di Origine Controllata Prosecco ("Consorzio"), through undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Best Drinks LLC's ("Plaintiff" or "Best Drinks") Amended Complaint (Dkt. No. 15).

## PRELIMINARY STATEMENT

This case represents an act of forum engineering, an attempt by Best Drinks, a UK-owned shell company, to use this Court as a shield against legitimate foreign litigation in the U.K. Consorzio respectfully submits that the case should be dismissed now.

First, this Court lacks personal jurisdiction over Consorzio. Plaintiff's Amended Complaint pleads no Virginia-directed conduct by Consorzio. The only alleged connection to this forum is the fortuity that VeriSign, the .com registry, is headquartered here. But VeriSign's location does not create *in personam* jurisdiction over a foreign defendant; Plaintiff's own allegations establish that all of the relevant conduct occurred in the United Kingdom or Italy.

Second, venue is improper. None of the events giving rise to Plaintiff's claims occurred in Virginia. All of the relevant conduct, including the communications, alleged threats, and litigation, took place in the United Kingdom or Italy.

Third, *forum non conveniens* and, relatedly, principles of international comity and declaratory judgment abstention, warrant dismissal or, at minimum, a stay. A lawsuit is already pending in the High Court of England and Wales over the very same dispute. There, Consorzio, the body entrusted by the Italian Republic with protecting the PROSECCO designation of origin, is suing Prosecco International Limited ("PIL"), as well as its principals Michael and Ralph Goldstein, both British citizens, for their unauthorized use of the PROSECCO designation in connection with certain internet domain names and related commercial activities.

Rather than defend those claims in the U.K., the same individuals caused Best Drinks LLC, a company that is Virginian in name only, to file this action six weeks later. Best Drinks has no office or business operations in Virginia; its principal place of business is in London, and its members are U.K. citizens, domiciled there. Yet, it warehouses twenty-six (26) PROSECCO-comprising domain names transferred to it by the very same PIL that is a defendant in the London litigation. Best Drinks was formed days before that transfer took place. Its manager is Michael Goldstein; its members are Ralph Goldstein and Natalie Kirschel. Michael and Ralph Goldstein are both defendants in the UK proceedings. The U.K. is the proper forum for this dispute, those are the proper parties, and that litigation should take precedence.

Finally, not one of the eight counts states a claim upon which relief may be granted. The Amended Complaint invokes two provisions of the Anti-Cybersquatting Consumer Protection Act, neither of which applies to this case. Section 1114(2)(D)(v) provides relief to registrants whose domain names have been suspended, disabled, or transferred; here, no domain name has been suspended, disabled, or transferred. To the extent the domain names are now subject to registry-level locks, that status resulted from Best Drinks' own filing of a Registry Certificate in this action, not from any action by Consorzio or the UK litigation. Section 1125(d)(2) creates *in rem* jurisdiction for trademark owners proceeding against cyber-squatters; Plaintiff owns no trademark and disclaims any interest in one. In fact, this Court has already observed that the availability of *in rem* jurisdiction under § 1125(d)(2) is doubtful on these facts. Dkt. No. 29 at 3 n.3.

Plaintiff's remaining claims, for unfair competition, fraud, tortious interference, conversion, and abuse of process, rest on the theory that Consorzio committed actionable wrongs under Virginia law by virtue of bringing a lawsuit in a court of competent jurisdiction

2

in the U.K. to enforce rights that a European Court recognizes and protects. That is not tortious conduct. It is the rule of law at work.

**STATEMENT OF FACTS**

This lawsuit arises out of the improper use of Defendant's PROSECCO-comprising Domain Names by Plaintiff. In March 2012, the Italian Ministry of Agricultural, Food, and Forestry Policies appointed Consorzio to carry out functions of protection, promotion, development, consumer information, and general care for the interests of the Denominations of Protected Origin ("PDO") "PROSECCO." *See* Dkt. No. 1-1 at Exhibit 16. Through this appointment, Defendant was endowed, entitled, and -- in fact -- required to take the necessary steps to protect and enforce the rights afforded to it. One of those steps is becoming the registered proprietor of the U.K. Registered Certification Trade Mark No. UK00003257427 ("The Registered Mark") "PROSECCO." *Id*. Consorzio registered the word "PROSECCO" as a PDO with the European Union on August 1, 2009 and the U.K. on March 10, 2021, granting Consorzio protection, and specifically reserving the term for certain wines that meet a particular set of conditions and requirements. *Id*.

In 2018, Michael Goldstein purchased the Domain Names of "proseccoDOC.com," "proseccowine.com," and "prosecco.com," which were later transferred to PIL in 2021, a U.K. company that Michael and Ralph Goldstein own and control. Dkt. No. 15 ¶¶ 17-18. PIL used the Domain Names to advertise various goods, services, and businesses within the U.K. *See* Dkt. No. 1-1 at Exhibit 16. These actions prompted or featured the use of the word PROSECCO in relation to products which were not compliant with the PDO PROSECCO. *Id.*

In 2022, PIL, through Michael Goldstein, contacted Consorzio to request market information. On July 29, 2022, Consorzio provided the requested information and, in connection with PIL's non-compliant use of the PROSECCO designation, inquired whether

3

PIL would voluntarily assign the Domain Names. Dkt. No. 15 ¶ 32; *see also* Dkt. No. 1-1 at Exhibit 11.

Rather than respond, Michael Goldstein created Best Drinks in Virginia on September 1, 2022, *see* Dkt. No. 1-1 at Exhibit 1. Just five days later, PIL conveyed and assigned the Domain Names to Plaintiff "to pursue the marketing and promotion of prosecco in the United States." Dkt. No. 15 ¶¶19, 33.

Consorzio, unaware of this new entity, followed up with Goldstein on September 12 and October 4, 2022, inquiring whether PIL had addressed the non-compliant use of the Domain Names. Dkt. No. 1-1 at Exhibit 12. Only after Best Drinks' formation and the assignment were complete, did Goldstein respond, stating on October 7, 2022, that the Domain Names "are in use and not for sale." *Id*. On February 20, 2023, Consorzio wrote again, noting that the domains appeared inactive or were redirecting to unrelated websites, and requesting that Goldstein clarify his intentions regarding the Domain Names. Dkt. No. 15 ¶36.

On October 27, 2023, Consorzio's U.K. counsel wrote to PIL and Michael Goldstein demanding that their unauthorized use of the PROSECCO designation cease. Dkt. No. 15 ¶37. Goldstein and PIL each declined to engage on the merits, directing Consorzio instead to contact Best Drinks as the "proper party." *Id*. ¶¶38-39. Consorzio's counsel was unable to locate any entity by that name; the bestdrinks.com domain simply redirected to prosecco.com. Dkt. No. 21-1 at ¶22. Consorzio nonetheless wrote to Best Drinks on January 29, 2025, at the only address that Goldstein had provided. *Id*. Consorzio received no response, from the very entity that Goldstein had created, which Goldstein also managed, and as to which Goldstein had arranged the transfer of the Domain Names. *Id*.

On August 22, 2025, having exhausted its efforts to resolve the matter, Consorzio commenced proceedings in the United Kingdom against PIL and the Goldsteins, the only parties whose identities Consorzio had been able to confirm, and whom Consorzio believed –

and continues to believe – are the entities responsible for the acts complained of. Dkt. No. 15 ¶42. Six weeks later, Best Drinks filed this action. Dkt. No. 1.

## LEGAL STANDARD

### I.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must dismiss a complaint if it cannot assert personal jurisdiction over the nonresident defendant. Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists." *Teleqo Tech. Sols., Inc. v. Archtop Fiber LLC*, No. 1:24-cv-01515-MSN-LRV, 2024 U.S. Dist. LEXIS 207340, at *5 (E.D. Va. Nov. 13, 2024)(citation omitted). To assert personal jurisdiction, "a plaintiff must prove (1) that the forum state's long-arm statute authorizes the exercise of jurisdiction[;] and (2) that the exercise of jurisdiction satisfies due process." *Rubink v. Richland Cty. Sheriff's Dep't*, No. 3:25cv220, 2025 U.S. Dist. LEXIS 111404, at *4 (E.D. Va. June 11, 2025) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Because Virginia's long-arm statute extends personal jurisdiction "to the outer bounds of due process," this two-pronged test becomes a single inquiry. *See Teleqo Tech. Sols*, 2024 U.S. Dist. LEXIS 207340, at *6-7 (E.D. Va. Nov. 13, 2024)(citing *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 201 (4th Cir. 2012)). In turn, the minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020).

### II.   MOTION TO DISMISS FOR LACK OF VENUE

Federal Rule of Civil Procedure 12(b)(3) allows parties to move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). If venue is challenged, the plaintiff bears the burden of demonstrating that venue is appropriate. *AudioPod IP, LLC v. Amazon.com, Inc.*, No. 3:24CV406 (RCY), 2025 U.S. Dist. LEXIS 37915, at *20 (E.D. Va. Mar. 3, 2025) (citations

omitted). "The Court 'considers to be true any well-pleaded allegations of the complaint that bear on venue, unless contradicted by defendant's affidavit evidence.'" *Id*. (quoting *Symbology Innovations, LLC v. Lego Sys.*, 158 F. Supp. 3d 916, 924-25 (E.D. Va. 2017)).

## III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

When considering a Rule 12(b)(6) motion to dismiss, the "reviewing court must determine whether the complaint alleges sufficient facts to raise a right to relief above the speculative level" and "facts sufficient to state all the elements of [its] claim[.]" *LBLA Beauty, LLC v. 11177753 Can. Corp.*, Civil Action No. 1:23-cv-665 (RDA/LRV), 2025 U.S. Dist. LEXIS 55594, at *9 (E.D. Va. Mar. 25, 2025) (citations and quotations omitted). However, while the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable" to the plaintiff, "conclusory allegations regarding the legal effect of the facts alleged need not be accepted" *Id*. at *10 (citations and quotations omitted).

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER CONSORZIO

This Court lacks personal jurisdiction over Consorzio. Plaintiff's Amended Complaint pleads no Virginia-directed conduct by this Italian organization. Because due process requires contacts created by the defendant—not by the plaintiff or a third party—Plaintiff fails to establish personal jurisdiction, and the *in personam* claims must be dismissed.

### A.    Plaintiff Failed to Plead a Basis for General Jurisdiction

First, this Court lacks general jurisdiction. Best Drinks' Amended Complaint does not, nor can it, allege that Consorzio is incorporated in Virginia or maintains its principal place of business within this District. *See generally* Dkt. No. 15. To the contrary, Plaintiff correctly pleads that Consorzio is an Italian organization headquartered in Treviso, Italy. *Id*. at ¶7. Under U.S. Supreme Court precedent, when courts are faced with general jurisdiction inquiries, they must ask whether the foreign corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 119

6

(2014) (cleaned up). Plaintiff's jurisdictional paragraph identifies no facts that even approach satisfying that standard. Dkt. No. 15 ¶10.

### B.        Plaintiff Failed to Plausibly Allege Specific Jurisdiction

Regarding specific jurisdiction, the Fourth Circuit has articulated three factors that courts must consider when determining whether they have "personal jurisdiction over a nonresident defendant: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.'" *Teleqo Tech. Sols., Inc.*, 2024 U.S. Dist. LEXIS 207340, at *6-7 (quoting *UMG Recordings, Inc.*, 963 F.3d at 351-52)). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Plaintiff's Amended Complaint wholly fails to satisfy the first prong of this test.

### 1.        Consorzio Did Not Purposefully Avail Itself in Virginia

Plaintiff's jurisdictional allegations amount to only two purported facts, one of which is erroneous: (1) Consorzio "purposefully directed their conduct toward" Virginia through Verisign, the .com and net domain name registry, which is located within this District; and (2) Plaintiff is a Virginia LLC. Dkt. No. 15 ¶¶9–11. However, Plaintiff's own pleading undercuts its allegations as to this Court's jurisdiction.

First, the Amended Complaint fails to plead that Consorzio: (1) communicated with Verisign; (2) invoked a Verisign process; (3) filed anything in the Commonwealth of Virginia; (4) served any Virginia actors; (5) traveled to Virginia; or (6) contracted in the state. Instead, Consorzio has sought relief relating to the domain names from PIL and the Goldsteins in the U.K. In fact, any and all relevant conduct that gave rise to this litigation occurred in the United Kingdom or, more broadly, in Europe.

7

Plaintiff's own Amended Complaint pleads that Consorzio emailed Michael Goldstein, acting on behalf of PIL, in July 2022 about acquiring the domain names; this email was sent to Goldstein in the U.K. Dkt. No. 15 ¶ 32. Importantly, any alleged threats or communications between Consorzio, Goldstein, PIL, and Bird & Bird regarding the domain names occurred in the U.K. *Id*. ¶¶ 34, 36-37, 41. Even after Goldstein and PIL directed Defendant to communicate with Best Drinks regarding the Domain names, Consorzio continued to direct all communications to Goldstein and PIL in the U.K., which caused PIL to remind "Defendant Consorzio's counsel that no effort had been made to contact Best Drinks directly." *Id*. ¶¶ 38-39. Best Drinks even pleads that meetings occurred throughout 2018 and 2025 at Defendant's offices in Italy, not Virginia. *Id*. ¶ 86. Finally, Consorzio initiated legal proceedings in the U.K. against PIL and the Goldsteins. *Id*. ¶ 42. Thus, all pleaded actions occurred outside of the United States.

The Supreme Court has held that when courts conduct the minimum analysis, they must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Crabtree v. Aon Ins. Managers Bermuda Ltd.*, Civil Action No. 1:23-cv-00493 (AJT/JFA), 2023 U.S. Dist. LEXIS 166953, at *6 (E.D. Va. Aug. 15, 2023). In essence, a plaintiff cannot be the only link to the forum State. *See generally Walden*, 571 U.S. at 284-86.

Second, Plaintiff's fortuity that VeriSign is headquartered in Virginia is not a defendant-created Virginia contact, *see* Dkt. No. 15 ¶¶ 9-10 and 93, nor is Plaintiff's Virginia LLC registration dispositive, especially given the fact that Plaintiff also pleads that its principal place of business and members are all located in London. *Id*. at ¶ 6. Moreover, Plaintiff's single allegation that the Domain Name Defendants listed in Exhibit 17 of its original Complaint somehow confers personal jurisdiction because they too are "registered with a domain-name registry VeriSign, Inc., located and doing business in the Commonwealth of Virginia[,]" is

8

misguided because that registration alone is not enough to create personal jurisdiction. *See Conopco, Inc. v. Rebel Smuggling, LLC*, No. 2:21-cv-347, 2021 U.S. Dist. LEXIS 239497, at *11-12 (E.D. Va. Dec. 14, 2021) ("Here, the Court finds [defendant's use of servers provided by Verisign] to be a tenuous and unconvincing factor for personal jurisdiction. Ultimately, unlike in *UMG Recordings*, this is 'a situation where a defendant merely made a website that happens to be accessible in Virginia.' 963 F.3d at 355. Accordingly, the Court cannot conclude that Defendant 'purposefully availed itself of the privilege of conducting activities in the [Commonwealth].'").

As in *Conopco*, VeriSign's location in Virginia is "a tenuous and unconvincing factor for personal jurisdiction," 2021 U.S. Dist. LEXIS 239497, at *11–12, particularly where, as here, Consorzio did not direct or target any of the challenged conduct to Virginia or its residents.

> ### 2. Plaintiff's Claims Do Not "Arise Out Of or Relate To" Any Virginia Contact

Even if some minimal Virginia contact existed (although none are pleaded), Plaintiff's claims arise from communications, alleged threats, and legal proceedings that all occurred in the U.K. or Italy. *See* Dkt. No. 15 ¶¶34–44, 70–105. Plaintiff failed to plead any conduct that occurred in Virginia, thus, making the required link between forum conduct and the alleged claims missing. *Bristol-Myers Squibb v. Superior Court*, 582 U.S. 255, 265 (2017) ("What is needed – and what is missing here – is a connection between the forum and the specific claims at issue."); *Galloway v. Martorello*, Civil Action No. 3:19-cv-314, 2023 U.S. Dist. LEXIS 140785, at *26 (E.D. Va. Aug. 11, 2023) ("[I]t is necessary to ascertain whether 'the claims arise out of those activities' that were directed to the forum."). Here, Plaintiff identifies no in-forum activity by Consorzio that is tied to its declaratory judgment, Lanham Act, or tort claims. Dkt. No. 15 ¶¶45–76, 78–105.

### 3.    Exercising Jurisdiction Would Be Constitutionally Unreasonable

Because Plaintiff's inability to "satisfy the first two prongs[, this] Court [should conclude] that [it] would be constitutionally unreasonable to exercise personal jurisdiction in this case." *Conopco, Inc.*, 2021 U.S. Dist. LEXIS 239497, at *13 (E.D. Va. Dec. 14, 2021) (citing *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)).

### C.    Plaintiff's Registry Location Theory is Legally Insufficient for *In Personam* Personal Jurisdiction

Congress has already provided a separate *in rem* mechanism in the Anti-Cybersquatting Consumer Protection Act ("ACPA") that anchors both venue and jurisdiction through a registry or registrar's location. 15 U.S.C. § 1125(d)(2). Courts in this District have consistently held that the ACPA's *in rem* provision "provides for jurisdiction in the district in which the registrar *or* the registry is located and designates the location of the registrar *or* the registry as the *situs* of a domain name subject to an *in rem* action." *Am. Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 454 (E.D. Va. 2003); *see also CNN L.P. v. Cnnews.com*, 162 F. Supp. 2d 484, 492 (E.D. Va. 2001)("Because Verisign is located within this district and has control over the cnnews.com domain name, *in rem* jurisdiction in this case is therefore constitutional."). Plaintiff's own Amended Complaint alleges that *in rem* is the only appropriate action here because there is no personal jurisdiction. Dkt. No. 15 ¶¶ 11, 55–62.

Because Plaintiff pleads no Virginia-directed conduct by Consorzio, the Court should dismiss all *in personam* claims[1] against Consorzio under Rule 12(b)(2). And Count Two fares no better. As this Court has already observed, § 1125(d)(2) limits the availability of *in rem* jurisdiction to situations where the owner of the mark "is not able to obtain *in personam* jurisdiction over a person" or "through due diligence was not able to find a person" who would

---

[1] Counts 1, and 3-8.

have been a defendant under the ACPA. 15 U.S.C. § 1125(d)(2). That provision was enacted for trademark owners proceeding against cyber-squatters, not for domain name registrants seeking declaratory relief while simultaneously disclaiming trademark ownership. Best Drinks is not a trademark owner and does not claim to be one. The statute does not authorize the relief that Best Drinks seeks. *See* Dkt. No. 29 at 3 n.3; *see also Weitzman v. Lead Networks Domains Pvt., Ltd.*, No. 1:09-cv-01141 (CMH/IDD), 2010 U.S. Dist. LEXIS 121290, at \*26 (E.D. Va. Sep. 24, 2010) ("The only remedies available for a mark owner who must proceed *in rem* are forfeiture, cancellation, or transfer of the infringing domain name to the mark owner.").

## II.    FORUM NON CONVENIENS WARRANTS DISMISSAL

Even if this Court were to allow Count Two to proceed (which it should not), dismissal is still warranted under *forum non conveniens*. The Amended Complaint is centered on a U.K. litigation, including both U.K. and EU PDO issues. Dkt. No. 15 ¶¶42–44, 70–105. Best Drinks itself operates primarily from London. *Id*. ¶6. Finally, the public and private interest factors strongly favor a non-U.S. forum.

### A.    *Forum Non Conveniens* Dictates that the Court Dismisses Plaintiff's Amended Complaint

"A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011) (quoting *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984)).

"The Supreme Court has established a three-part framework for *forum non conveniens* in which the moving party must show that an 'alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved.'" *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 136 (4th Cir. 2022) (citing *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *see also Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).

"Availability will ordinarily be satisfied when the defendant is amenable to process in the other jurisdiction. A foreign forum is 'adequate' when 'all parties can come within that forum's jurisdiction' and 'the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.' Yet 'where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative.'" *dmarcian, Inc.*, 60 F.4th at 136 (4th Cir. 2022) (cleaned up); *see also Piper Aircraft*, 454 U.S. at 254 n.22.

Here, the first factor is met because Defendant is amenable to process in another jurisdiction. In fact, Defendant was the one that initiated such process in the U.K. Dkt. No. 15 ¶42.

The second factor, adequacy, is also met as the United Kingdom is the most adequate place for this litigation. "A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 619 (E.D. Va. 2013) (quoting *Jiali Tang*, 656 F.3d at 248). Here, all parties have a principal place of business in Europe. Specifically, Best Drinks' principal place of business is in the U.K. where its two members, Ralph Goldstein and Natalie Kirschel, are also citizens of and currently domiciled. Dkt. No. 15 ¶6. As for Defendant, it is a registered proprietor of the Registered Mark "PROSECCO" in the U.K. and has already initiated litigation in the U.K. *See* Dkt. No. 1-1 at Exhibit 16; Dkt. No. 15 ¶42.

Additionally, the parties will not be deprived of all remedies or treated unfairly if they were to litigate this matter in the U.K. Courts have granted similar dismissals in cases such as

12

this because English courts can adequately address the essential subject matter of the dispute. *See Capital Currency Exch. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) ("[A] forum may be adequate even if it does not provide a plaintiff with causes of action that are identical to those plaintiff alleged in an American court… Although it appears that plaintiffs might not be able to recover in England on some of their common law claims, the essential subject matter of the dispute can be adequately addressed by an English court."); *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (affirmed district court's dismissal on the grounds of *forum non conveniens*, concluding that England was more appropriate because New York's generalized interest in overseeing banks headquartered in its state did not create a strong local interest nor outweigh England's greater interest in regulating activity that occurs there).

Finally, the third factor, that an alternative forum is more convenient in light of the public and private interests involved, weighs heavily in favor of granting the motion to dismiss. *See generally AdvanFort Co. v. Zamil Offshore Servs. Co.*, 704 F. Supp. 3d 669, 677-79 (E.D. Va. 2023) (district court dismissed the complaint on the basis of *forum non conveniens* when it held that the relevant conduct occurred in Saudi Arabia, witnesses resided there, and there was "little local interest" in litigating the case in Virginia and burdening the citizens of the United States).

The private interest factors, including ease of access to proof, availability of compulsory process, cost of obtaining testimony, and practical trial considerations, all favor the United Kingdom. Every relevant witness is located in Europe. Best Drinks' principal place of business is in London; its two members, Ralph Goldstein and Natalie Kirschel, are UK citizens domiciled there. The pending UK litigation is already against Ralph Goldstein. The documents at issue, including the domain registration records, the pre-litigation correspondence, and the UK Particulars of Claim, all originated in Europe. The only connection

13

to this District is Best Drinks' registered agent address. Moreover, because Best Drinks is "a corporation doing business abroad," its choice of a US forum is entitled to diminished deference. *DiFederico v. Marriott Int'l Inc.*, 714 F.3d 796, 807 (4th Cir. 2013).

The public interest factors likewise favor dismissal. *AdvanFort Co.*, 704 F. Supp. 3d at 678-79 (citing *Tang*, 656 F.3d at 249). Virginia's interest in this dispute is minimal. The Amended Complaint concerns communications, alleged threats, and litigation that all occurred in the United Kingdom. The only connection to Virginia is Best Drinks' LLC registration, which postdates the underlying controversy. Dkt. No. 1-1 at Exhibit 1; Dkt. No. 15 ¶¶ 19, 33. This case would require the Court to interpret UK trademark law and EU PDO regulations, areas in which the U.K. courts possess far greater expertise. And the controversy's contacts with the United States "pale in comparison to the controversy's foreign contacts," making it unfair to burden citizens of this District with jury duty. *AdvanFort Co.*, 704 F. Supp. 3d at 679. At bottom, this is a dispute between European entities and British citizens over activities that occurred primarily in the United Kingdom and Italy. Dkt. No. 15 ¶¶ 6-7, 32-44. *See ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 621 (E.D. Va. 2013) (dismissing on *forum non conveniens* where the only connection to the district was a small number of sales and the dispute was between Russian parties over Russian activities).

### III.   INTERNATIONAL COMITY AND DECLARATORY JUDGMENT ABSTENTION WARRANT DISMISSAL OR, AT A MINIMUM, A STAY

Even if this Court were to determine that it could still retain jurisdiction over Consorzio, the Court should stay the matter until the resolution of the U.K. proceedings.

The U.S. Supreme Court has stated that comity is the "recognition which one nation allows within its territory to . . . judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws." *Hilton v. Guyot,* 159 U.S. 113, 163-64, (1895). "In reviewing comity concerns, courts will weigh the relative strengths of the foreign country's

14

and host country's interests and determine whether to dismiss based on whose interests are stronger." *BDL Int'l v. Sodetal USA, Inc.*, 377 F. Supp. 2d 518, 526 (D.S.C. 2005). Moreover, "federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous [foreign] proceedings and wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation clearly favors abstention[.]" *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (citations and quotations omitted). "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel [foreign-court] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Nutramax Labs. Veterinary Scis., Inc. v. Candioli S.R.L.*, No. 0:19-01835-MGL, 2021 U.S. Dist. LEXIS 44983, at *10 (D.S.C. Mar. 10, 2021)(citations omitted).

Prayer D of Plaintiff's Amended Complaint requests that this Court restrain Consorzio from pursuing relief in the U.K., and to declare that foreign geographic-indication rights cannot be enforced to affect the Domain Names. Dkt. No. 15 ¶¶3–5; Prayer D. However, comity counsels abstention from issuing anti-suit relief absent a clear threat to this Court's jurisdiction or public policy. "International comity counsels us to give effect, if possible, to the judgments of foreign courts in order to strengthen international cooperation…Even courts following the liberal framework recognize that comity concerns are far greater where an injunction would bar a foreign sovereign (rather than a private party) from litigating a dispute in its own courts." *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 480 (4th Cir. 2018) (citations omitted).

Here, Consorzio's U.K. action directly addresses foreign intellectual property, and squarely impacts public issues such as Consorzio's PDO, as well as litigation against Best Drinks' members. Dkt. No. 15 ¶¶42-44. Additionally, no parallel U.S. action by Consorzio

15

exists against Best Drinks. *See New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America*, 946 F.2d 1072, 1073 (4th Cir. 1991) ("When a litigant urges abstention on the ground that concurrent federal and [foreign] suits present exceptional circumstances, the district court must first determine whether the [foreign] and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."). The injunction that Best Drinks seeks in this Court would intrude on the U.K. proceedings that are addressing both U.K. and European Union laws. Thus, this Court should decline such relief as a matter of comity and equitable discretion.

The case for abstention is even stronger, given that every declaratory judgment count in the Amended Complaint (Counts One through Three) sounds under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Supreme Court has long held that district courts possess broad discretion to decline to entertain declaratory judgment actions. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction."); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). The Act "has repeatedly been characterized as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287.

The Fourth Circuit applies a multi-factor test when evaluating whether to decline declaratory jurisdiction where parallel proceedings are underway. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)). The relevant factors are: (i) the strength of the foreign jurisdiction's interest in having the issues decided there; (ii) whether the issues can more efficiently be resolved in the foreign proceeding; (iii) whether permitting the federal action

16

would result in unnecessary entanglement due to overlapping issues of fact or law; and (iv) whether the declaratory action is being used merely as a device for "procedural fencing." *Id.*

Each of these factors favors abstention in the case at bar. The United Kingdom has an overwhelming interest in adjudicating claims under its own trademark and PDO laws against U.K. residents and a U.K. company. The U.K. proceedings involve the same domain names, the same underlying dispute, and are further advanced. Specifically, Consorzio (1) has filed and served PIL, Michael Goldstein and Ralph Goldstien; and (2) submitted a detailed Particulars of Claim with annexed evidence, and is now proceeding into the active stage before the High Court. *See* Dkt No. 1-1 at Exhibit 16. Parallel proceedings present an obvious risk of conflicting rulings. And this U.S. action is a textbook case of procedural fencing: Best Drinks filed six weeks after the U.K. action was filed, Best Drinks is not itself a party to the U.K. proceedings, Best Drinks warehouses a portfolio of twenty-six (26) PROSECCO-comprising domain names without conducting any sales, and Best Drinks transparently seeks a U.S. ruling to obstruct legitimate foreign litigation in the U.K. Consorzio respectfully submits that this Court should exercise its discretion under *Brillhart* and *Wilton* to dismiss or stay Plaintiff's declaratory judgment claims.

## IV.    VENUE IS IMPROPER

"28 U.S.C. § 1391(b) provides that venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Mehta v. Maddox*, Civil Action No. 1:16-cv-1616, 2017 U.S. Dist. LEXIS 79276, at *8 (E.D. Va. May 23, 2017).

17

None of the statutory bases for venue apply in this case. Defendant is a citizen of Italy and incorporated within the European Union system. Dkt. No. 15 ¶7. The events giving rise to Plaintiff's claims—the communications, alleged threats, and the U.K. litigation—all occurred outside of Virginia. Dkt. No. 15 ¶¶ 32-44. The Amended Complaint fails to allege that any act by Consorzio giving rise to this litigation occurred in Virginia. Even if the Court determines that VeriSign's presence anchors the *in rem* relief under §1125(d)(2), it does not supply venue for *in personam* claims. *See generally Weitzman*, 2010 U.S. Dist. LEXIS 121290, at *26 (E.D. Va. Sep. 24, 2010) ("The only remedies available for a mark owner who must proceed *in rem* are forfeiture, cancellation, or transfer of the infringing domain name to the mark owner.").

## V.    ALTERNATIVELY, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Alternately, even if this Court were to find that both jurisdiction and venue are proper in this Court, Plaintiff's claims are independently defective and dismissal is necessary.

### A.    Count One's ACPA Declaratory Judgment Fails Because Plaintiff Failed to Plead a Concrete Threat

Section 1114 (2)(D)(v) states:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v). "Thus, to establish a right to relief against an 'overreaching trademark owner' under this reverse hijacking provision, a plaintiff must establish (1) that it is a domain name registrant; (2) that its domain name was suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II); (3) that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action by service or otherwise; and (4) that the plaintiff's

registration or use of the domain name is not unlawful under the Lanham Act, as amended." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003).

Count One fails to meet the second factor. Plaintiff's Amended Complaint fails to allege a concrete threat as is required by the ACPA; instead, Best Drinks alleges that Defendant brought a foreign, U.K. litigation against non-parties, seeking to compel relief abroad. Dkt. No. 15 ¶¶42–44. Plaintiff fails to allege, nor can it, any pending UDRP, registrar lock, or registry directed at VeriSign or other registrar in Virginia. *Id*. ¶¶45–53. Plaintiff's asserted controversy is thus speculative and unrealized, thereby necessitating dismissal. The statutory text is clear: § 1114(2)(D)(v) authorizes suit only by "[a] domain name registrant whose domain name has been suspended, disabled, or transferred." 15 U.S.C. § 1114(2)(D)(v) (emphasis added). This is a threshold requirement, not a factor to be weighed. No domain name here has been suspended, disabled, or transferred. Plaintiff itself has confirmed this fact when it informed the Court that VeriSign had placed the domain names on "ServerTransferProhibited" and "ServerDeleteProhibited" status, ensuring that "the status quo will remain in place" during the pendency of this action. Dkt. No. 23. This Court denied the TRO as moot on that basis. Dkt. No. 24. Because Plaintiff cannot satisfy the statutory predicate, Count One must be dismissed.

**B.     Count Two's *In Rem* Declaratory Judgment Under § 1125(d)(2) Fails Because Best Drinks Is Not a Mark Owner**

Count Two should be dismissed for failure to state a claim as well. Section 1125(d)(2) authorizes *in rem* actions against domain names only by "the owner of a mark." 15 U.S.C. § 1125(d)(2)(A)(i). The provision was enacted to give trademark owners a mechanism to reach cyber-squatters who cannot be found or served. *See Weitzman v. Lead Networks Domains Pvt., Ltd.*, No. 1:09-cv-01141 (CMH/IDD), 2010 U.S. Dist. LEXIS 121290, at *26 (E.D. Va. Sep. 24, 2010) ("The only remedies available for a mark owner who must proceed in rem are forfeiture, cancellation, or transfer of the infringing domain name to the mark owner."). Best

19

Drinks does not own the PROSECCO mark. And Best Drinks disclaims any trademark interest. Dkt. No. 15 ¶58 ("No party holds an enforceable United States trademark registration[.]"). The statute does not authorize a domain name registrant to invoke § 1125(d)(2) as a vehicle for declaratory relief while simultaneously disclaiming trademark ownership.

This Court has already flagged this issue. In granting alternative service of process, Magistrate Judge Vaala observed that § 1125(d)(2) "limits the availability of *in rem* jurisdiction to situations where the owner of the mark 'is not able to obtain *in personam* jurisdiction over a person'" and declined to address whether *in rem* jurisdiction exists on these facts. Dkt. No. 29 at 3 n.3. In short, § 1125(d)(2) was enacted as a tool for trademark owners to reach anonymous cyber-squatters, not as a vehicle for domain name registrants to obtain declaratory relief against mark owners. Best Drinks has the statutory relationship backwards, and Count Two should be dismissed.

**C.      Count Three's Request for Declaratory Judgment—Non-Infringement is Not Ripe as Pleaded and Should be Dismissed**

Count Three of Plaintiff's Amended Complaint fails to allege a case or controversy, rendering this claim non-justiciable. "Article III of the United States Constitution establishes the 'case or controversy' requirement which limits federal jurisdiction to cases presenting 'real and substantial' controversies involving 'the legal relations of parties having adverse legal interests' and prohibits the exercise of jurisdiction over cases which are based upon 'a hypothetical state of facts.'" *Virgin Enters., Ltd. v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 227 (E.D. Va. 2000)(quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937)). In determining whether a case or controversy exists in a declaratory judgment action involving a trademark dispute, Courts apply a two-pronged test. *Id*. (citing *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985)). "First, the declaratory plaintiff must have a real and reasonable apprehension of litigation. Second, the declaratory

plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant." *Id*. (citation and quotation omitted).

Plaintiff failed to plead that it engaged in conduct which brought it into adversarial conflict with the declaratory defendant (here, Consorzio). Plaintiff pleads that "Consorzio's threats and foreign proceedings have created a substantial immediate, and concrete risk of interference with Plaintiff's lawful ownership and use of the Domain Names[,]" Dkt. No. 15 ¶64, however, those supposed threats were never directed at Best Drinks, nor were they ever directed to the United States, let alone Virginia. Moreover, and more importantly, Plaintiff's Complaint fails to allege any type of U.S. or domestic enforcement action by Consorzio, nor even a simple cease and desist letter to Plaintiff. Instead, those letters were directed at non-parties in a foreign jurisdiction. Dkt. No. 15 ¶¶32–44, 63–69. Moreover, the premise of Count Three is incorrect. Plaintiff alleges that "no party holds an enforceable United States trademark registration for the terms PROSECCO or PROSECCO DOC." Dkt. No. 15 ¶ 58. In fact, Consorzio holds U.S. Registration No. 5,268,635 for the certification mark "DOC PROSECCO PDO PROSECCO" and design, issued on August 22, 2017, which is valid and subsisting on the Principal Register. Because Plaintiff has failed to show that an actual case or controversy exists, the Court should dismiss Count Three.

**D.     Count Four's Fails to Adequately Allege "Use in Commerce" or Commercial Misrepresentation Made By Consorzio in the U.S.**

In order for Count Four to survive a motion to dismiss, Best Drinks must allege facts supporting the following five elements:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and, (5) that the defendant used the mark in a manner likely to confuse consumers.

*NSCO v. Colby_Exon, LLC*, Civil Action No. 3:16cv848, 2018 U.S. Dist. LEXIS 55080, at *17 (E.D. Va. Mar. 30, 2018) (citing *People for Ethical Treatment of Animals v. Doughney, (PETA)*, 263 F.3d 359, 364 (4th Cir. 2001)); *see also* 15 U.S.C. §§ 1114, 1125(a). Additionally, defendant's use of the mark must not only occur in the United States, but also likely confuse U.S. consumers. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023). The United States Supreme Court held that 15 U.S.C. § 1125(a) is "not [an] extraterritorial [statute] and that the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic applications of these provisions." *Id*. In order to be found liable under the Act, the Court "repeatedly emphasized *both* that the defendant committed 'essential steps' in the course of his infringing conduct in the United States and that his conduct was likely to and did cause consumer confusion in the United States." *Id*. at 422. Neither of those facts are alleged here, making the Act inapplicable to Defendant Consorzio.

Instead, Plaintiff alleges that Consorzio's threats, correspondence, and foreign litigation somehow constituted false advertising or false designation. Dkt. No. 15 ¶¶71–77. These allegations, however, are merely litigation communications and positions that occurred in foreign countries and courts. Moreover, these actions cannot -- and do not – constitute commercial advertising or promotion directed at U.S. consumers, nor do they constitute U.S. commercial use. Moreover, Best Drinks's unfair competition claim under § 1125(a) requires a "use in commerce" of a protected mark that "is likely to cause confusion." The Supreme Court has held that these provisions "are not extraterritorial and extend only to claims where the claimed infringing use in commerce is domestic." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023). The conduct that Best Drinks challenges, Consorzio's filing of proceedings in the United Kingdom and sending demand letters under U.K. law, is simply not a "use in commerce" of any trademark; it is the pursuit of legal remedies in a foreign jurisdiction. Count Four fails to state a claim on this independent ground as well.

22

### E.    Plaintiff Fails to Adequately Plead Count Five's Fraud and Misrepresentations

This Court should dismiss Plaintiff's Common Law Fraud and Misrepresentation claims. "In Virginia, to succeed on a claim for actual fraud, a party must show '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party mislead.'" *Hunt v. Calhoun Cty. Bank, Inc.*, 8 F. Supp. 3d 720, 730-31 (E.D. Va. 2014) (citing *State Farm Mut. Auto. Ins. Co. v. Remley,* 270 Va. 209, 219, 618 S.E.2d 316 (2005)). "Virginia law also recognizes an action for fraud where misrepresentations are made without specific fraudulent intent but made with reckless abandon and disregard for the truth." *Id*. (citing *Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614, 628 (4th Cir. 1999)). "Constructive fraud in Virginia differs from actual fraud only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id*. (citations omitted)

The Amended Complaint alleges that Consorzio made "false and misleading representations to third parties, including the U.K. courts," and that these statements were made "with the intent to deceive U.S. third parties into believing that Defendant Consorzio held superior rights[.]" Dkt. No. 15 ¶¶79-80. Such allegations are legally inapposite. Plaintiff states that it "justifiably relied on the accuracy of domain-name registration system[.]" Dkt. No. 15 ¶ 82. But Best Drinks was required to plead that it *relied upon* Defendant's statements. *McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 559 (4th Cir. 2013) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. We have elaborated that the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.")(cleaned up). Instead, Plaintiff failed to plead that it relied on Consorzio's statements, or that it suffered damage due to its

23

reliance. Plaintiff also fails to allege how it suffered "loss of business goodwill" or "interruption of online commerce."

Finally, even if Plaintiff relied on whatever statements Defendant made to the U.K. courts, those statements are absolutely privileged. *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004) ("It is well-settled that words spoken or written in a judicial or quasi-judicial proceeding are absolutely privileged when relevant to the subject matter of the proceeding."). Thus, Defendant cannot be held liable for statements made in a judicial proceeding, even if Plaintiff had relied upon them.

### F.      Count Six's Tortious Interference with Business Expectancy Fails to Allege Improper Methods

Plaintiff's Count Six, tortious interference with business expectancy, should be dismissed because it fails to allege improper methods in Virginia. "Under Virginia law, the tort of intentional interference with contractual rights or business expectancy consists of the following prima facie elements: (1) the existence of a valid contractual relationship or business expectancy; (2) the putative interferer's knowledge of the relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. [ ] In certain contexts, including interference with prospective businesses and business expectancies, a plaintiff must also allege as part of its prima facie case that the defendant employed improper methods." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143 (4th Cir. 2014) (citations and quotes omitted). In Virginia, improper methods include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.*

Plaintiff's Amended Complaint alleges interference via a foreign litigation and communication with non-Virginia actors. Dkt. No. 15 ¶¶86–91. First, Plaintiff fails to plead that Consorzio, as the alleged putative interferer, had knowledge of any of Best Drinks'

24

relationships or expectancy. Moreover, Plaintiff fails to identify a specific Virginia expectancy which Consorzio supposedly interfered with to result in damage, but it is also silent as to what improper methods recognized under Virginia law were supposedly utilized. Rather, Plaintiff makes conclusory statements like "fraud, misrepresentation, and abuse of foreign judicial process[.]" *Id*. ¶89. This is not sufficient. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 694 (E.D. Va. 2004) (citing *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) ("[M]erely pleading the magic words of [a cause of action] is insufficient to pass a complaint through the Rule 12(b)(6) crucible because the court need not accept as true 'conclusory allegations regarding the legal effect of the facts alleged.'"); *see also Fountain Enters., LLC v. Markel Ins. Co.*, 568 F. Supp. 3d 613, 619 (E.D. Va. 2021) ("Mere conclusory statements or 'formulaic recitation of the elements of a cause of action' are insufficient under this standard.").

### G.    Plaintiff's Count Seven Must be Dismissed As Consorzio Has Not Deprived Plaintiff of Any Property

Count Seven (Conversion) should be dismissed because Plaintiff still owns the property from which it alleges it was deprived. Here, Plaintiff alleges that Consorzio "has wrongfully asserted dominion and control over Plaintiff's property by falsely claiming ownership of the Domain Names," by bringing the U.K. litigation against Goldstein and PIL, both of which are non-parties in this case. Dkt. No. 15 ¶95.

"To state a claim for conversion under Virginia law, Plaintiffs must allege: (1) the ownership or right to possession of the property at the time of the conversion; (2) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession; and (3) the property at issue can be the subject of a conversion claim." *In re Capital One Fin. Corp.*, Civil Action No. 1:25-cv-023 (AJT/WBP), 2025 U.S. Dist. LEXIS 104577, at *32 (E.D. Va. June 2, 2025) (citation and quotation omitted).

Plaintiff fails to satisfy any of the conversion elements. However, for purposes of this motion only, Defendant will focus solely on the second prong. Plaintiff alleges that Consorzio

25

"asserted dominion," Dkt. No. 15 ¶95, while in the same pleading admits that Best Drinks still controls the Domain Names. *Id*. ¶¶20–24, 92–99. Indeed, Best Drinks's own pleading completely contradicts and undermines its conversion theory: Plaintiff simultaneously alleges that it retains full ownership and control of the Domain Names, while then claiming that Consorzio has wrongfully exercised dominion over those names. *Id*. ¶101. Plaintiff cannot claim in one breath that it owns and controls the Domain Names, even seeking an injunction, while also claiming conversion which, by definition, asserts that Best Drinks lost dominion over its own property. Moreover, Consorzio's right to seek relief in a foreign court against Goldstein and PIL does not amount to conversion, especially when Consorzio did not yet take ownership of the Domain Names, or stop Plaintiff from using them. Because Defendant did not take or deprive Plaintiff of its use of the Domain Names, Count Seven should be dismissed.

### H. Count Eight's Abuse of Process Fails Because Foreign Filing for Claimed PDO Rights Is Not "Abuse"

Plaintiff's final claim, abuse of process, alleges that Defendant wrongfully invoked legal process for an ulterior purpose: "to obtain the suspension and transfer of U.S. registered domain names." Dkt. No. 15 ¶101.

The Fourth Circuit has held that "the elements of an abuse-of-process claim are: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. Regarding the second element, a legitimate use of process to its authorized conclusion, even when carried out with bad intention, does not constitute abuse of process. Rather, the gravamen of the tort lies in the abuse or the perversion of the process *after* it has been issued." *BNX Sys. Corp. v. Nardolilli*, 368 F. App'x 339, 342 (4th Cir. 2010) (citations and quotations omitted) (cleaned up).

Even if the Court were to find that the first element was adequately pled, which it was not, Plaintiff still fails to properly plead the second element. Plaintiff's allegation that Defendant filed its U.K. litigation, does not demonstrate abuse or a use of process not proper

in the regular course of proceedings. Instead, it shows a party exercising both its U.K. and EU PDO rights. Thus, because using a foreign court to obtain remedies available under foreign law—even if inconsistent with Plaintiff's view of U.S. law—is not "abuse of process" under Virginia law, this Court should dismiss Count Eight.

## CONCLUSION

For the foregoing reasons, Consorzio respectfully requests that this Court: (1) dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2); (2) dismiss for improper venue under Rule 12(b)(3); (3) dismiss under the doctrine of *forum non conveniens*; (4) dismiss under principles of international comity and declaratory judgment abstention; or, in the alternative, (5) dismiss for failure to state a claim under Rule 12(b)(6). In the alternative, should the Court decline to dismiss the case, Consorzio respectfully requests that the Court stay this action pending resolution of the United Kingdom proceedings.

Dated: February 26, 2026

Respectfully submitted,

/s/
Charles B. Molster, III (Va. Bar No. 23613)
LAW OFFICES OF CHARLES B. MOLSTER,
III PLLC
1901 Pennsylvania Avenue, N.W., Ste. 610
Washington, DC 20005
Telephone: (703) 346-1505
Email: cmolster@molsterlaw.com

*Counsel for Defendant Consorzio di Tutela
della Denominazione di Origine Controllata
Prosecco*

27

**Certificate of Service**

I hereby certify that I have filed the forgoing document using the Court's ECF system, which will send copies to all counsel of record.

/s/ Charles B. Molster, III
Charles B. Molster, III